and the first issue relates to the application of safety valve. Mr. Anchundia-Espinoza was convicted of Title 46 U.S.C. 7503 and there's a big objection was made that he was not afforded safety valve and the probation report and the court agreed found that this should not apply. Safety 553F says it's not an enumerated offense. We understand that obviously the Ninth Circuit has reviewed this and the Eleventh Circuit has said that is the case and that's the law, but the Fifth Circuit hasn't looked at it. And we're asking the court to review the statute. We believe under de novo review, we believe that it is ambiguous and susceptible to a different interpretation and therefore not engage in a plain text reading of the statute. And I think our main argument that we look at that we bring forth to the court is to the dissent Judge Fischer had in the Ninth Circuit case of Gamboa Cardenas. And he put forth that there is another interpretation. And I think what he's saying in the dissent, what we're asking the court to look at is what is the purpose of safety valve? Because I think what he was saying was this really goes to punishment. And in 46 U.S.C. 7503, it says the punishment for these offenses are found in 21 U.S.C. 960. And so the punishments are the same. And so safety valve really is more of a punishment issue than a statutory offense issue. And so we believe that it is susceptible to two different points of view. And we'd ask the court to do that. Roberts. It doesn't say punishment under. Miller. No. It does simply say an offense under 35 — offense under 960. It doesn't say punishment. And I agree that's the way the Ninth Circuit and the Eleventh Circuit have looked at it. Has any other — has any circuit gone the way you're urging? Not — not yet. And we're asking you to do it. We're asking this Court to do it and not follow the herd. It's a pretty clean legal argument. So, I mean, I'd love you to get to the roll and reduction. Okay. So then I'll move on to that. As far as the roll reduction goes, I think what we're trying to say in the roll reduction, I think he did preserve the objection and laid out in his objection the different factors the Court can look at and should look at in the case. I think the issue that we're having that we bring to the Court is how Judge Mazant viewed him — viewed Mr. Enchindia-Espinosa as related to other participants. And based on his ruling, what he — what he seemed to do is say he just looked at the people indicted in the case and how he applied it to other co-defendants, but didn't expand it to the entire criminal activity in the case, and just limited it that. And we believe — Who the other criminal participants were, other than the people on the boat? There — there was some — there was, but it wasn't really developed because there was some suggestion that there was consistent relation of what happened, that they were approached by unknown people that said, hey, here's an offer to get on the boat. There was other people involved. There was other boats that came and picked them up, gave them fuel. So it was — seemed to be quite an extensive operation, but it was never expanded beyond that. It didn't say these people were in charge or other people were in charge, but it did suggest that. We don't know much about the beginning people back in Ecuador, and we don't really know much because they never get to Mexico. Correct. What he did know was they used at least three boats to go through international waters with 35 bales of cocaine. That's what they all did, captaining the boats. Correct. I just have a really hard time saying he committed clear error in finding that that's not peripheral. That just seems immensely involved in — in a major drug trafficking. So we would be saying, well, actually it's a — that what they did was peripheral to —  obviously in order to — they needed pilots to, you know, people to drive the boats to get — That's what our law says is the minor reduction. It's for people that are peripheral. I think I'm quoting from our law. Get apart — get away from this comparative thing. It may be he slipped, saying, well, I know much better the charge people, what happened to them. I really have no idea about other people. Could be big people, could be low people. I just don't know, so I'm going to compare to them. And none of these guys that captained with so many amount — bales of cocaine are peripheral. Why would that be clear error? Or do you not accept that it's a clear error framework? No, I mean, obviously that's the standard that we're — I do accept that. And I — That's important. You accept that the analysis here is for clear error. Correct. But I think what — when you look at his analysis to determine whether or not it should apply, I think his — the approach he took was very — it was very — it should have been a little bit more expansive, because the — because these people didn't do this in a vacuum, and — It's got to be true in any drug conspiracy. There's always going to be a Pablo Escobar somewhere. That makes everyone like him. I know that's — I agree that would — I'm not trying to expand it to the point of that these people are — you know, certain low-level people would always get a minor role adjustment. I'm not suggesting — I'm not suggesting that. What I'm saying is — I was thinking sort of — since it's the defendant's burden to show he's minor, he would have to somehow cooperate or make a statement to probation and say, I was just a mule. This guy, as far as I understand, didn't cooperate at all. Well, I — Is that right or wrong? No, I — He didn't plead. Well, I — He didn't plead, but he — without a plea, right? He just pled straight up. The other guy's got the EUC1C pleas, right? Yes. So how can he not say there are other bigger people and yet then say it's error not to have assumed there are other bigger people? Well, because he did — he didn't cooperate post-arrest, but at the time of his arrest, he did sit down and interview at his arrest and lay out how this happened, that he was approached by somebody in Ecuador to say, we will pay you $1,000 now if you pilot the plane to this location. We'll pay you an additional $9,000 and then fly you back home. And the other thing that's critical is when you look at the other co-defendants, they all in the PSR all did the same thing, gave post-arrest statements, and they all corroborated each other. They were approached by these unknown folks that said, hey, we're going to offer you this, and they did that. So he did provide information to show that he was this kind of a peripheral person because he wasn't somebody that was already involved in the drug trade. He was approached by somebody to do it. He made a poor decision by accepting it, and he pled guilty and took responsibility for that. But I think when they rely on the facts in the PSR, he clearly stated how he got involved, what his role was, and when you look at that, I do think he was peripheral because — I guess it doesn't matter since he took them up on the offer, but if he said, no, I'm not going to do this, they would have moved on to somebody else. So he wasn't this integral part in the whole scheme of things. They clearly had a plan laid out. They were just trying to recruit people to help them do it. So I do think it was necessary to look at the bigger scope of things to do that. And also, I addressed the issue about the other people had 11 C1Cs. The problem with that, and I think with that analysis, is that was their choice to enter into that agreement. They could have taken the same choice to pled guilty without a plea agreement and made the same arguments, but they chose not to. And so Judge Mazzan, I think, does say in the record, well, I didn't give it to the other folks. I didn't consider that for the other people. But he couldn't have because they entered into binding plea agreements. And so the analysis is shouldn't be looked at those co-defendants, but everybody as a whole, and then the other people that put this operation into play. So I think that is important for the court to look at. And I think when you look at all the different factors that his counsel laid out in his objection about how he would meet all these factors, I think he clearly met as a minor role that he should have been given a role reduction. And so I think that was clear for the record, and I think Judge Mazzan made an error by not considering the larger group when he did that. One last question because it sounds like you're going to sit down and you have rebuttal time. The government files a brief and it says we were reviewing this for clear error. And you didn't file a reply brief. That's your prerogative. So you accept that this is a clear error. We're not asking whether the judge made a legal mistake interpreting the guidelines. No, he didn't. I mean, he's clear. He didn't make a legal mistake. It's a clear error standard of review. Clear error standard of review. Thank you, Your Honor. May I please the Court? Counsel. Now, after being apprehended on a boat in international waters loaded with over 800 kilos of cocaine, Mr. Achundia was indicted in the Eastern District of Texas. He was indicted for a Title 46 United States Code section violation of 70503. And he pled guilty and he received 175 months for that offense. He now challenges two aspects, as indicated by appellate counsel. The first is whether he should receive the safety valve provision under Title 18 United States Code section 3553F. And as indicated or conceded by defense counsel, the Ninth Circuit and the Eleventh Circuit have ruled on that issue already. And he's asking that this Court follow the dissent in the Ninth Circuit. And we're obviously asking that you follow the other circuits that have found accordingly. And this Court has also, in an analogous situation in the Phillips case, looked at that specific issue. It looked at a Title 21 United States Code section violation of 860. That's the distribution of drugs within 1,000 feet of the school. And it looked at that particular violation because of the fact that that violation incorporates by reference the penalty in Section 841. And Section 841 is an enumerated offense under 3553. But this Court rejected that argument that because 860 incorporates by reference the penalty provisions, that would necessarily put a violation of 860 under 841. And this Court said that it did not. So we rely on the Phillips case, and we rely on Comboa-Cardenas and Pertuz-Pertuz from the Eleventh Circuit. Now, there have been other cases out of the Eleventh Circuit after Pertuz-Pertuz that have ruled in the same fashion. So we'd ask this Court not to find that a safety vial was available to any offenses other than the offenses contained in 3553F, as well as in Section 960. Now, interestingly enough, Your Honor, I would point out that in 2014, a section was added to Section 960. In 2014, Section 825 was added to Section 960 as an enumerated offenses. Prior to that, the enumerated offenses were 952, 955, 957, 959. But in 2014, Congress added Title 21, United States Code, Section 825. So if Congress wanted to address this issue, they could have very easily added 70503 to an offense under Section 960, just like they added Section 825. Why did the government take the different position, the opposite position earlier? In what? I'm sorry. I understand from the Ninth Circuit case, the government used to actually take the position that your colleague is taking. We're asking that you follow the majority in the Ninth Circuit, Your Honor. I understand that. But the government itself, did the government itself take the position that defense counsel is taking today? No. The government took the position that the statute was unambiguous and that only the enumerated offenses under those particular sections should qualify for safety valve reduction. Do you disagree with the majority in the Ninth Circuit? No. I agree with the majority in the Ninth Circuit. The majority in the Ninth Circuit says that the government used to take the other side's position. No. The majority in the Ninth Circuit ruled that only the enumerated offenses. Maybe I'm missing your question, Your Honor. But the majority in the Ninth Circuit ruled that only the enumerated offense under Section 3553 qualified for safety valve consideration in regards to the statutory minimum. Okay. Now, there's one exception to the rule of the plain and ordinary language in a statute. And that's when giving the statute its plain and ordinary meaning leads to an absurd result. And that's just not the case here. The plain and ordinary application of the words in the statute don't lead to an absurd result. It's a basic criminal and there's a principle in criminal justice that states that the more serious the crime, the more serious the punishment. And that's exactly what is occurring here. The statutory text is unambiguous in that sense. The difference between 960 offenses and 70503, it lies in the prohibited conduct therein. So in my brief, I gave an example of a violation of 955 because it also occurs on a vessel. But 955 criminalizes the possession of a controlled substance on a vessel. 70503 penalizes the possession of a controlled substance on board a vessel subject to the jurisdiction of the United States. But it also penalizes the distribution, the manufacturing and distribution of the drug. So one is possession and the other is possession with the intent to manufacture and distribute. That's strong exposition in the brief, too, these arguments. Okay. You want me to move on to the mitigating role? I will move on to the mitigating role, Your Honor. In the mitigating role adjustment, we would, first of all, rely on the quantity of drugs. This circuit has indicated that just based on the quantity of drug alone is sufficient to negate or deny a mitigating role adjustment. In regards to the questions that you were posing to defense counsel as to what, or appellate counsel, as to what should the court look at. Well, the court in this case, Judge Mazzant, looked at the PSR and looked at the information in the PSR. That's the information that he used to make a determination of whether this individual merited a reduction. If the sentencing judge says, I think in assessing role reductions or enhancements, I'm limited only to co-defendants that plead, I can't look in a conspiracy case at unindicted co-conspirators, that would be reversible legal error, correct? Correct. Do we have any of that flavor here? I know they're not saying there's a legal error here, but does that exist? Did he feel he had to only focus on the? No, he felt and explained in his rationale in the sentencing that he was looking at the PSR, he was looking at the facts and the evidence in the PSR, he was looking at the fact that the defendant had the burden of two things. The first burden was to establish who was the average participant, and the second thing was to say how he was substantially less culpable than the average participant, and in this case, Judge Mazzant went through the analysis. He looked at the facts in the PSR. He reviewed that. It's a very specific evaluation that the judge has to do, and in this case . . . The fact that the AUSA sort of commendably said, Your Honor, there must be higher ups here. And as this Court just mentioned, there are always potentially more individuals. There's a Pablo Escobar or other people that are producing in the labs, but that was not the evidence that the Court had before it on this particular day. The facts that the Court had was these individuals, four individuals leave on a boat out of Ecuador. They go on this voyage. They run into, or they meet other individuals and refuel. They then go to another boat and meet three more individuals. They transfer the load. They put the load in the boat that's nearest to Mexico. And this was a five-day trip, so it didn't happen from one hour to the next. It was five days that they left Ecuador and traveled in this vast sea. They met these individuals to refuel. They then went and met the other individuals that are off the coast of Mexico. They sink one boat. They sink one boat. That's correct. And then they . . . And they don't pull over. And they discard the second boat, and they join the Mexican nationals in the last boat. They travel for two hours. Then the Coast Guard finds them. And in regards to this defendant being peripheral to the events, well, Your Honor, the record is clear that they used GPSs, that they used satellite radios, that they had to meet these individuals in the openness of the sea, that they refueled on two occasions. That took a lot of coordination and effort by the individuals in the boat. And Judge Mazzant looked at the fact that he was holding all of them. Based on the information that he had, he was holding all of them accountable for the entirety of the 860-something kilos of cocaine that was on the boat. The actions that all of them took together, that they were working in unison with one another, that they were working together to advance the criminal objective, which was the transportation. So that's what he viewed, and that's what he used to determine whether this individual was a mitigating or deserved a mitigating role. And after he went through that detailed analysis, he came to the conclusion that he did not. So that's why he ruled the way he did. Now, the defendant had the burden of producing evidence to suggest that he was less culpable than the average participant, and he failed to do that. So it's the government's position that he waived that argument, and secondly, that he produced no evidence, and because he produced no evidence, there's no plain error. Roberts. Okay. Thank you, counsel. Thank you. I wanted you to do the mitigating role. What's the question?  I'm assuming that the government, in the past, has basically taken the opposite position. It's apparently the government took their position in the Ninth Circuit and the First Circuit. I take it from your answer earlier that you're not familiar with why that is. No, Your Honor, I'm not. That's fine. Thank you. Just real briefly, Your Honor, as it relates to — I just want to address that the government decides the Phillips case, and I do think Phillips is somewhat distinguishable, because in 860 it does create additional penalties in 860, where it says — I mean, it relies on 841, but it says you're going to have twice the — there's multiple different penalties. So I think that's distinguishable than the — what Mr. Ochendi was convict of, because it simply just refers to the penalties in 960. So I do think there's a distinction there, and we'd ask the Court to look at it. As it relates to this role, I did concede it is clear error. I do — in reviewing our brief, we did address — we did say there was — it could be legal error. So I wanted to correct that, and so I've corrected it. But I do want you to point the Court to the record, because I think it's important. Because at some point, the government's attorney made a statement that they would agree with defense counsel that the conspirators or people in charge of the drugs initially in hiring, they probably did have a higher role, but this defendant's no less culpable than the other three co-defendants. And so — but then Judge Mazant goes on to say — he talks about — he makes this statement, I understand that the government does concede that you're less culpable than some of the other co-conspirators in the case that hired you to take the shipment, but that's not the way the Court looks at it. The Court looks at what is the average participant, and based on the evidence before the Court and what's contained in the pre-sentence report, the average participants are the other three co-defendants that participated when you left Ecuador. And I think that's the — that's the issue. That's the crux of it. I think he's simply comparing them to the other three that left Ecuador and not as a whole. Breyer. The crux is a legal error, not a sufficiency of the evidence. Verrilli, I think it's both, because I think that the evidence was there to say — to kind of describe the scope of the operation. So I think the evidence was there, but then I also think he — the subset that he used, that is the legal error. He should have considered the entirety of the whole. And so I think that's our position. We'd ask the Court to reverse and remain. Thank you, Your Honor. Oh, you're court-appointed. Thank you for that, and I've always thought, you know, you're a public attorney, too, so thank you for your service, both of you. Thank you, Your Honor.